# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| ANNA SANCHEZ, parent and guardian for M.S., a minor;<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CITY OF CHUBBUCK, a political subdivision of the State of Idaho; RICHARD T. WEBB, individually and in his official capacity as Chubbuck City Chief of Police; CLIFF CUMMINGS, FARLEY MERICA, and RANDY SEVERE, all individually and as employees of the City of Chubbuck, and JOHN DOES I through X;<br><br>　　　　Defendants. | Case No.: CV 08-551-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS, CITY OF CHUBBUCK, RANDY SEVERE, RICHARD WEBB, AND FARLEY MERICA, MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket No. 32)** |

Currently pending before the Court is Defendants, City of Chubbuck's, Randy Severe's, Richard Webb's, and Farley Merica's (collectively the "Defendants"), Motion for Summary Judgment (Docket No. 32).[1] Having carefully reviewed the record, considered the oral argument of counsel, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

---

[1] The Court notes that Defendants previously moved for summary judgment on October 26, 2009 (*see* Docket No. 29), but, following the Court's October 27, 2009 Docket Entry Order indicating that their briefing was not clearly legible in certain areas (*see* Docket No. 31), re-filed the exact same motion and accompanying paperwork on October 28, 2009 (*see* Docket No. 32). Therefore, the Court's resolution of Defendants' Motion represented at Docket No. 32 necessarily resolves Defendants' Motion represented at Docket No. 29.

**MEMORANDUM DECISION AND ORDER - 1**

**BACKGROUND**

On December 21, 2002, Felipe Max Galloway was shot and killed. Nearly two years later, on December 20, 2004, (1) Jackie Blackhawk, personally and as personal representative of the Estate of Felipe Max Galloway; and (2) Dorothy Gallegos, as parent, natural guardian, and next friend of D.G. and A.G., minors, instituted a wrongful death lawsuit against a number of parties, including Defendants, in the United States District Court for the District of Idaho (Case No. CV-04-629-E-BLW (the "Related Matter")). Ms. Blackhawk is the mother of the decedent and Ms. Gallegos is the parent and natural guardian of two of the deceased's minor children, D.G. and A.G. Following the Court's dismissal of the plaintiffs' state law claims on summary judgment, the parties eventually settled the balance of the action and the case was ultimately dismissed on December 20, 2006.

In the midst of the events following Mr. Galloway's death, another of his children was born. That child, M.S., was born on May 9, 2003.[2] On May 9, 2008,[3] Anna and Richard Sanchez adopted M.S. and, on December 19, 2008, Ms. Sanchez brought this action - a nearly identical wrongful death claim - against the same parties referenced above, including, again, Defendants.

Defendants now move for summary judgment, arguing that Plaintiff's claims - both state and federal - fail, based on the principle of res judicata and Plaintiff's alleged lack of standing. *See* Mem. in Supp. of Mot. for Summ. J., pp. 3-9 (Docket No. 32, Att. 2). Specifically,

---

[2] Based upon the record, it does not appear that Ms. Gallegos is M.S.'s mother; indeed, the parties appear to concede that, in fact, she is not.

[3] Plaintiff alleges M.S. was adopted on May 9, 2008. *See* Resp. to Mot. for Summ. J., p. 5 (Docket No. 34). Defendants allege that M.S. was adopted on May 29, 2008. *See* Mem. in Supp. of Mot. for Summ. J., p. 3 (Docket No. 32, Att. 2). Any difference is immaterial.

**MEMORANDUM DECISION AND ORDER - 2**

Defendants contend that Plaintiff's action should be dismissed because it seeks a double recovery and an inconsistent result from a final order of this Court in the prior, Related Matter. *See id*. Defendants alternatively challenge Plaintiff's standing to even file a wrongful death claim, following M.S.'s May 9, 2008 adoption. *See id*. at pp. 6-7 & 9.

## ANALYSIS

### A.   Summary Judgment Standard of Review

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id*. at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as

affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *Id*. at 256-57. The non-moving party must go beyond the pleadings and show "by [his] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb though the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forseberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

**B.     Res Judicata**

As Defendants correctly point out, little appreciable difference exists between the application of res judicata to Plaintiff's state claims or to Plaintiff's federal claims. *See* Mem. in Supp. of Mot. for Summ. J., p. 4 & 8 (Docket No. 32, Att. 2) (citing *Ticor Title Co. v. Stanion*, 144 Idaho 119 (2007); *Brown v. Bureau of Reclamation*, 2008 WL 4239006 (D. Idaho 2008) (unpublished)). That is, in either state or federal court, res judicata generally bars a subsequent action for relief if that subsequent action (1) includes the same parties or their privies; (2) includes the same claims; and (3) if a final judgment is entered in the previous action. *See id*. Although these requisite elements are not disputed in the abstract, Plaintiff and Defendants

**MEMORANDUM DECISION AND ORDER - 4**

disagree on whether the first element is satisfied here - namely, whether Ms. Blackhawk already represented M.S.'s interests when she, as personal representative of the decedent's estate, participated in, and resolved, the Related Matter. *See* Reply in Supp. of Mot. for Summ. J., p. 2 (Docket No. 37) ("Essentially, Plaintiff's position is that Jackie Blackhawk had no right to execute the Release on behalf of M.S., and was not representing M.S.'s interests when she did so."). If so, res judicata bars Plaintiff's claims;[4] if not, res judicata is inapplicable. Resolving this question as a matter of law, however, is problematic.

Although Defendants state matter-of-factly (in both their briefing and at oral argument) that Ms. Blackhawk brought the Related Matter "on behalf of the heirs" (*see* Memo. in Supp. of Mot. for Summ. J., pp. 4-5 & 9), the record potentially suggests otherwise. For example, nowhere in the Related Matter's pleadings is there a reference to Ms. Blackhawk bringing claims on behalf of anyone other than herself and the decedent's estate (as the estate's designated "personal representative"). *See, e.g.*, Second Am. Compl. at p. 2, ¶ 1, attached as Ex. A to 10/26/09 Hall Aff. (Docket No. 32, Att. 1) ("Plaintiff Jackie Blackhawk, is the mother, and personal representative of the estate of, the decedent, Felipe Max Galloway . . . .").[5] Indeed,

---

[4] For the purposes of this Motion, Plaintiff offers no real argument disputing that (1) this action and the Related Matter include the same claims and (2) a final judgment was entered in the Related Matter. Thus, res judicata's application to Plaintiff's claims turns simply on whether Ms. Blackhawk acted on behalf of M.S. (and other heirs) in the Related Matter.

[5] The "Release and Indemnity Agreement" (the "Settlement Agreement") between the plaintiffs and Defendants in the Related Matter is similarly cryptic on the salient issue of this case, as it fails to define the scope of Ms. Blackhawk's involvement in the Related Matter at all. *See* Settlement Agreement, attached as Ex. D to 10/26/09 Hall Aff. (Docket No. 32, Att. 1) ("KNOW ALL MEN BY THESE PRESENTS: That DOROTHY GALLEGOS, as parent natural guardian, and next friend of D.G. and A.G., minors, and JACKIE BLACKHAWK, for the sole consideration of . . . to Releasors . . ., do hereby release, acquit, and forever discharge the [Defendants] . . . .") (Capitals in original); *but see infra* at p. 7.

**MEMORANDUM DECISION AND ORDER - 5**

only Ms. Gallegos is specifically referenced as bringing claims in connection with any of the decedent's heirs. *See id.* at p. 2, ¶ 2 ("Plaintiff Dorothy Gallegos is the mother and natural guardian of D.G. and A.G., minors, whose father was the decedent [Felipe Max] Galloway.").

With this backdrop, the Court is reluctant to assume that a decedent's estate's personal representative, without more, necessarily acts on behalf, and for the benefit, of the decedent's heirs, as Defendants' briefing suggests is the case. Not only does Defendants' moving paperwork neglect to offer any legal support for such a conclusion,[6] the Uniform Probate Code (adopted in Idaho) paints a more limited, contrasting picture of a personal representative's duties and obligations. *See, e.g.*, I.C. § 15-1-201(34) ("'Personal representative' includes executor, administrator, successor personal representative, special administrator, and persons who perform substantially the same function under the law governing their status."); *see also* I.C. § 15-3-711

---

[6] Defendants claims that Ms. Blackhawk's authority to act "on behalf of all the heirs not otherwise named" is further supported by the Settlement Agreement's indemnity/hold harmless provision, arguing:

> Such is demonstrated in the settlement agreement where Jackie Blackhawk agreed to indemnify and hold the Defendants harmless against "*any and all* claims, actions, or causes of action, that may be made by any other person claiming to be a personal representative, *heir*, or survivor of decedent Felipe Max Galloway."

*See* Memo. in Supp. of Mot. for Summ. J., p. 5 (Docket No. 32, Att. 2) (Italics in original). While it is true that the Settlement Agreement contains such language (*see* Settlement Agreement, attached as Ex. D to 10/26/09 Hall Aff. (Docket No. 32, Att. 1)), it cannot be read to mean that Ms. Blackhawk represented all other heirs' interests. Rather, it could be interpreted just the opposite - as acknowledging the *possibility* of future claims from heirs not named in the Related Matter, with the parties bargaining over such a possibility by imposing a duty to indemnify and hold harmless upon Ms. Blackhawk and/or Ms. Gallegos, as the releasing parties. Without dissecting here the intended scope of the Settlement Agreement's indemnity/hold harmless provision, for the purposes of this Motion, the Court does not adopt Defendants' argument in this respect and, therefore, will not read into such a provision the extent of a releasing party's representation.

**MEMORANDUM DECISION AND ORDER - 6**

("Until termination of his appointment[,] a personal representative has the same power over the title to property of the estate that an absolute owner would have, in trust however, for the benefit of the creditors and others interested in the estate.").[7] In other words, the designation of an estate's personal representative does not automatically elevate the personal representative to the role of a de facto, universal spokesperson for all things associated with a decedent and/or his estate, including acting on behalf of a decedent's heirs. More is needed.

In examining the record for that "more," the Court notes that the "Release of all Claims" (the "Release") between the plaintiffs and another defendant in the Related Matter, Cliff Cummings,[8] identifies Ms. Blackhawk as the "personal representative of the estate *and heirs* of FELIPE MAX GALLOWAY . . . ." *See* Release, attached as Ex. F to 11/11/09 Bailey Aff. (Docket No. 33, Att. 1) (Italics added, capitals in original); *compare supra* at p. 5, n. 5. Further, Idaho's wrongful death statute only allows claims directly by a decedent's heirs or personal representatives on the heirs' behalf. *See* I.C. § 5-311(1) ("when the death of a person is caused by the wrongful act or neglect of another, his or her heirs or personal representatives on their

---

[7] Moreover, Idaho Code section 15-3-705 requires that an estate's personal representative "give information of his appointment to the heirs and devisees," including:

> the name and address of the personal representative, indicate that it is being sent to persons who have or may have some interest in the estate being administered, indicate whether bond has been filed, and describe the court where papers relating to the estate are on file.

*See* I.C. § 15-3-705 ("The personal representative's failure to give this information is a breach of his duty to the persons concerned but does not affect the validity of his appointment, his powers or other duties."). This section further highlights a possible distinction between an estate's personal representative and a decedent's heirs (or the heirs' personal representatives).

[8] Mr. Cummings was also named as a Defendant in this action, however was dismissed with prejudice following Plaintiff's and Defendant Cummings' Stipulation of Dismissal with Prejudice (Docket No. 41). *See* 1/21/10 Order (Docket No. 44).

**MEMORANDUM DECISION AND ORDER - 7**

behalf may maintain an action for damages against the person causing the death . . . ."). Relying on *Hagy v. State*, 51 P.3d 432 (Idaho Ct. App. 2002), Defendants argue that, pursuant to Idaho Code section 5-311, Ms. Blackhawk "could not possibly have executed the [Settlement Agreement] on behalf of the Estate of Felipe Max Galloway, as the estate had no right to pursue a tort action against [Defendants] in the first place." *See* Reply in Supp. of Mot. for Summ. J., p. 2 (Docket No. 37) (citing *Ha*gy, 51 P.3d at 437 ("Furthermore, the Idaho Supreme Court has held that no right of action is given to the estate of the victim of a tort, but is granted only to his or her heirs. . . . . If there are no heirs, no right of action vests in anybody." (Internal citations omitted)). With all this in mind, it is unclear who, exactly, Ms. Blackhawk represented in the Related Matter and, as a particular consequence, res judicata on this record is unavailable. Interestingly, Chief U.S. District Judge B. Lynn Winmill shared this uncertainty in the Related Matter when considering the defendants'[9] renewed motion for summary judgment:

> Although it is not absolutely clear in what capacity Blackhawk and Gallegos are suing Defendants, it is clear that they can both represent the interests of the minor children. Defendants correctly note that Idaho Code § 5-311 is written in the disjunctive. However, the disjunctive is between the heirs and the representatives of the heirs, not between one representative and another representative. The reference in Idaho Code § 5-311 to heirs and personal representatives is in the plural form. Therefore, both Blackhawk and Gallegos can represent the minor children as personal representatives.
>
> At some point before trial, Plaintiffs will be required to flesh out the capacity in which Blackhawk and Gallegos are suing Defendants.

---

[9] The moving defendants in the Related Matter consisted of: (1) the City of Chubbuck, (2) Richard Webb, (3) Farley Merica, (4) Randy Severe, (5) Marty Frasure, (6) Matt Galloway, and (7) Brian Ellis. *See* Renewed Mot. for Summ. J. (Case No. CV-04-629-E-BLW (Docket No. 117)). A number of these defendants are identical to the Defendants here: the City of Chubbuck, Randy Severe, Richard Webb, and Farley Merica.

**MEMORANDUM DECISION AND ORDER - 8**

>However, at this point the Court declines to dismiss either of them based on a claimed lack of standing.

*See* 11/24/06 MDO, pp. 24-25 (Case No. CV-04-629-E-BLW (Docket No. 158)).

Unfortunately, the Related Matter resolved itself before the parties "settled the pond" on the particular scope of Ms. Blackhawk's representation.[10] That question remains unanswered and, based upon the current record, the Court cannot now say, as a matter of law, that Defendant is entitled to the benefit of a res judicata defense because of the factual uncertainty regarding Ms. Blackhawk's role.

Without clear evidence that Ms. Blackhawk represented anyone other than herself, individually, and the decedent's estate, this Court is incapable of inferring that she legitimately represented M.S. or, for that matter, *all* other known/unknown heirs of the decedent. While this may indeed be the case, the record does not support such a conclusion at this time. *See, e.g.*, 11/19/09 Sanchez Aff., ¶ 5 (Docket No. 34, Att. 2) ("I am not aware of any of the Defendants ever contacting a representative or guardian of M.S. with respect to settlement of M.S.'s claims for [Felipe] Max Galloway's wrongful death."). Therefore, Defendants' Motion for Summary Judgment premised upon res judicata is denied.

## C. Standing

Defendants also challenge Plaintiff's standing to pursue state and federal wrongful death claims. *See* Memo. in Supp. of Mot. for Summ. J., pp. 6-7 & 9 (Docket No. 32, Att. 2). In this respect, Defendants argue that Idaho Code section 16-1509 "makes it clear that M.S. has no

---

[10] Further, the Settlement Agreement did not allocate the defendant's monetary consideration among Ms. Blackhawk, as the personal representative of the decedent's estate, and Ms. Gallegos, the parent, natural guardian, and next friend of D.G. and A.G., minors. *See* Settlement Agreement, attached as Ex. D to 10/26/09 Hall Aff. (Docket No. 32, Att. 1).

**MEMORANDUM DECISION AND ORDER - 9**

standing to pursue a claim for the [alleged] wrongful death of his father" (*see* Reply in Supp. of Mot. for Summ. J., pp. 5-6 (Docket No. 37)) because, "at the time of his adoption, M.S.'s right to recover for the alleged wrongful death of his biological father was terminated (*see* Mem. in Supp. of Mot. for Summ. J., p. 6 (Docket No. 32, Att. 2)). The Court disagrees.

Idaho Code section 16-1509, "Release of Child's Parents from Obligation - Termination of Rights of Parents and Children," provides:

> Unless the decree of adoption otherwise provides, the natural parents of an adopted child are, from the time of the adoption, relieved of all parental duties toward, and all responsibilities for, the child so adopted, and have no right over it, and all rights of such child from and through such natural parents including the right of inheritance, are hereby terminated unless specifically provided by will.

*See* I.C. § 16-509. While the Court acknowledges that this section could possibly be read to endorse Defendants' position, it is more sensible in the Court's view with public policy and equity, and the Legislature's presumed intent gleaned from a review of the statutes in their entirety, that this section only forecloses an heir's wrongful death claim if that heir was adopted *before* the decedent died - a situation not present here.

M.S. was adopted more than five years *after* his father died. Defendants concede that, during those five years, M.S. could have pursued a wrongful death claim. *See* Reply in Supp. of Mot. for Summ. J., p. 6 (Docket No. 37) ("Although such a claim may have been available to M.S. prior to [his adoption] . . . ."). Plaintiff likewise admits that any adoption preceding Mr. Galloway's death would have precluded M.S.'s wrongful death claim. *See* Resp. to Mot. for Summ. J., p. 5 (Docket No. 34) ("Had M.S. been adopted prior to his father's death, parental duties would have terminated and no claim could be brought."); *see also* Pl.'s Supp. Brief in Opp. to Mot. for Summ. J., p. 2 (Docket No. 47) ("It is quite clear to the Plaintiff that an

**MEMORANDUM DECISION AND ORDER - 10**

adoption <u>prior</u> to the death of either biological parent would in fact, where statute dictates, terminate the biological parental relationship.") (Emphasis in original).

To state as a matter of law, as Defendants move this Court to do, that an adoption terminates a wrongful death claim predating and existing for five years before that same adoption, reads too much into Idaho Code section 16-509.[11] During those five years, a parent-child relationship between M.S. and his biological father was arguably denied in a way that a subsequent adoption does not clearly obviate. In the Court's mind, the significance of this temporal reality clashes with Defendants' interpretation of Idaho Code section 16-509, potentially ending Plaintiff's claims before they even begin.

---

[11] Plaintiff cites to *Edwards v. Holmes Constr. Co.*, 84 Idaho 327 (1962) in support of this proposition. *See* Resp. to Mot. for Summ. J., p. 6 (Docket No. 34). There, William Edwards, a father of three minor children, was killed on May 2, 1958. *See Edwards*, 84 Idaho at 328. Mr. Edwards' employer admitted liability for payment of, and paid, workmen's compensation death benefits to his surviving widow and children. *See id*. However, the employer later terminated those benefits to two children, following their February 16, 1960 adoption. *See id*. The adoptive parents sought an order from the Industrial Accident Board (the "Board"), compelling the employer to resume payment of the compensation benefits to the adopted children. *See id*. at 329. The Board ultimately ordered the employer to continue payment of the benefits to the children. *See id*.

The employer then appealed the Board's award of continued benefits to the adopted children, arguing, similar to Defendants here, that the children's adoption terminated the parent's duty of support, including the at-issue death benefits. *See id*. The Idaho Supreme Court disagreed, finding that an adoption following an event giving rise to a cause of action does not terminate the children's entitlement to any disability benefits. *See id*. Looking to Idaho Code section 16-1509, the Court stated in no uncertain terms:

> Noteworthy, the case here does not involve an adoption occurring *during the lifetime of the natural father, and therefore, decision on this proposition advanced by [the employer] is unnecessary*.

*See id*. at 330 (Emphasis added).

While factually different (death benefits vs. the ability to bring a wrongful death claim), the Court finds *Edwards'* rationale when discussing Idaho Code section 16-1509 to be preponderantly similar to Plaintiff's position regarding Defendants' standing challenge.

**MEMORANDUM DECISION AND ORDER - 11**

Simply put, the Court cannot conclude that Idaho Code section 16-509 effectively denies Plaintiff standing to pursue a wrongful death claim.[12] Certainly, had M.S. never been adopted, Idaho Code section 16-509 would not apply to prevent his wrongful death claim; that is, under Idaho law, a minor has a right to recover for the wrongful death of a parent. *See* I.C. § 5-311. Still, the Court recognizes that a change in parental status, following an adoption, may affect an adopted child's ability to pursue a claim based upon the subsequent, wrongful death of that child's biological parents - at the moment of adoption, the adoptive parents replace the natural parents and become the legal parents from whom a wrongful death claim arises; conversely,

---

[12] The authority cited in Defendants' supplemental briefing (*see* Defs.' Supp. Brief in Supp. of Mot. for Summ. J. (Docket No. 46)) is distinguishable and, therefore, not persuasive. For example, in *Phraner v. Cote Mart, Inc.*, 63 Cal. Rptr. 2d 740 (Cal. App. 1997), the plaintiff child was adopted in September 1987, but her biological mother did not die until approximately *six years later*, in August 1993 (not August 1987 as Defendants argue in their briefing). *See Phraner*, 53 Cal. Rptr. 2d at 741. Similarly, in *Simmons v. Brooks*, 342 So.2d 236 (La. App. 1977), the plaintiff child was adopted in 1967 and "*some time later*, the child's biological father passed away . . . ." *See* Defs.' Supp. Brief in Supp. of Mot. for Summ. J., p. 4 (Docket No. 46) (citing *Simmons*, 342 So.2d at 236) (Emphasis added). Finally, in *Sluder v. Marple*, 134 S.W.3d 15 (Ky. App. 2003), it is implied that plaintiff child was, again, adopted *before* the death of his biological father. *See Sluder*, 134 S.W.3d at 16.

In contrast, the authority cited in Plaintiff's supplemental briefing (*see* Pl.'s Supp. Brief in Opp. to Mot. for Summ. J., (Docket No. 47)) is more consistent with *Edwards* (*see supra* at p. 11, n. 11). *See, e.g.*, *Emory Univ. v. Dorsey*, 429 S.E.2d 307, 308 (Ga. App. 1993) ("Consequently, we hold that to the extent that Jordan is otherwise entitled to recover under the wrongful death statute, his adoption *after* his mother's death does not bar that recovery.") (Emphasis added); *Corley v. State Dept. of Health & Hospitals*, 749 So.2d 926 (La. Ct. App. 2 Cir. 1999) (rejecting argument that plaintiff child was not entitled to recover for his father's wrongful death because he had been legally adopted by his mother's new husband at the time of trial, reasoning: "[A] cause of action for the recovery of wrongful death damages vests in favor of the surviving spouse and child on the date of death of the spouse or parent. The only relevant time for the determination of the relationship between potential claimants and the decedent is the date of death."). These cases (coupled with the inapplicability of Defendants' cited authority) support Plaintiff's argument only insofar as rejecting Defendants' summary judgment efforts particular to Plaintiff's standing, based upon the record now before the Court.

**MEMORANDUM DECISION AND ORDER - 12**

upon adoption, any rights/obligations flowing from the biological parents are extinguished. This strikes the Court as the most sensible reading of Idaho Code section 16-509. However, Idaho Code section 16-509 does not neatly apply, or even address, the situation here, where an adoption *post-dates* an alleged wrongful death of a biological parent.

Under such circumstances, the Court will not read Idaho Code section 16-509 to ignore the period of time between a biological parent's death and one's adoption. Thus, while Idaho Code section 16-509 may affect the nature and extent of Plaintiff's damages for wrongful death of a parent, it will not altogether foreclose Plaintiff's claims here. Defendants' Motion for Summary Judgment, relative to their standing argument, is therefore denied.

## ORDER

Based upon the foregoing, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket Nos. 29 & 32) is DENIED.

Consistent with the Court's September 23, 2009 Docket Entry Order, the Court directs the parties to proceed with mediation before Mr. Marvin Smith. If the parties need any assistance

 scheduling the mediation or have other questions about the mediation process, they may contact the Court's ADR Coordinator, Susie Boring-Headlee, at (208) 334-9067.

DATED: **February 24, 2010**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 13**